Pg. 1

1              IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF ILLINOIS
2

3  UNITED STATES OF AMERICA,      )
                                  )
4                  Plaintiff,     )
                                  )
5        vs.                      )  No. 09-cr-30007-DRH
                                  )
6  LARRY A. BECHEL,               )
                                  )  October 29, 2009
7                  Defendant.     )

8

9                 TRANSCRIPT OF PROCEEDINGS
          HEARING TO DETERMINE STATUS OF COUNSEL
          BEFORE THE HONORABLE DAVID R. HERNDON
10        CHIEF UNITED STATES DISTRICT COURT JUDGE

11 **APPEARANCES:**

12 For the Plaintiff:        Angela Scott, Esq.
                            Assistant U.S. Attorney
13                          9 Executive Dr., Suite 300
                            Fairview Heights, IL  62208
14                          (618) 628-3700

15 For the Defendant:       John D. Stobbs, II, Esq.
                            Stobbs Law Offices
16                          307 Henry St., Suite 21
                            Alton, IL  62002
17                          (618) 462-8484

18 Court Reporter:          Laura A. Esposito, RPR, CRR
                            U.S. District Court
19                          750 Missouri Avenue
                            East St. Louis, IL  62201
20                          (618) 482-9481

21

22

23

24     Proceedings recorded by mechanical stenography;
   transcript produced by computer.
25

1          *(Court convened)*

2               THE COURT:  Show that we have called case of

3     *United States of America vs. Larry A.* -- is your last name

4     pronounced "Beck-el"?

5               THE WITNESS:  Yeah.

6               THE COURT:  -- *Bechel*, 09-30007.  Government is

7     present and represented by Assistant United States Attorney

8     Angela Scott.  Good morning, Ms. Scott.

9               MS. SCOTT:  Good morning, Your Honor.

10              THE COURT:  Defendant is present in court with his

11    counsel, John Stobbs.  Good morning, Mr. Stobbs.

12              MR. STOBBS:  Good morning, Judge.

13              THE COURT:  The case was originally set today for a

14    change of plea and sentencing but we've changed it to a

15    hearing on the status of Mr. Bechel's representation, that

16    because the Court had received a couple of pro se motions

17    from the defendant, which we have since stricken because,

18    Mr. Bechel, we don't accept motions from defendants who are

19    represented unless those motions specifically ask that we

20    withdraw the representation of counsel, and your motions

21    went to other matters.  They specifically addressed

22    constitutional rights having to do with a whole host of

23    things, so those motions were stricken, but because of the

24    nature of the motions, they gave Mr. Stobbs pause with

25    respect to his representation of you, so he filed a motion

1    to determine the status of representation.  That motion is

2    found at Doc. 36.  He termed your motions a motion to

3    dismiss and a motion to suppress, gleaning from your motions

4    the most predominant issues.

5              So it begs the question, Mr. Bechel, whether you

6    want Mr. Stobbs to continue to represent you, and, if not,

7    why not?  And I certainly don't want you, particularly in

8    the presence of the U.S. Attorney, to reveal anything that's

9    either attorney-client privilege or something that could

10   incriminate you.  We can always have Ms. Scott step outside,

11   but before we do that I just warn you not to say anything

12   that could be used against you.

13             So are we on the right track as far as your having

14   some concerns with Mr. Stobbs or are you just -- were your

15   motions just designed to think you were helping Mr. Stobbs?

16   And why would you file such motions when the case is set for

17   a change of plea?

18             *THE DEFENDANT:*  I am so confused what's going on

19   here.

20             *THE COURT:*  Would you do me a favor, Mr. Stobbs.

21   Would you pull the microphone close to him and make sure

22   it's on, please.

23             *THE DEFENDANT:*  I'm so confused what's going on

24   here.

25             *THE COURT:*  You're going to need to lean a little

 1    closer to that microphone.

 2          *THE DEFENDANT:*  I'm just totally lost.

 3          *THE COURT:*  You're lost?

 4          *THE WITNESS:*  Yeah.

 5          *THE COURT:*  Okay.  Maybe you ought to step out,

 6    Ms. Scott, just to make sure he doesn't say something that

 7    maybe you shouldn't hear.

 8          **(AUSA Angela Scott exits the courtroom)**

 9          *THE COURT:*  Hold on one second, Mr. Bechel.

10          Now, you say you're lost, Mr. Bechel, but typically

11    at this point in time, particularly when you're at this

12    stage, you would be talking with Mr. Stobbs and getting your

13    bearings and your discussions with Mr. Stobbs.  So what's

14    going on?

15          *THE WITNESS:*  I just feel like I'm getting

16    railroaded by the whole system, you know.  I mean it's just

17    hard for me to explain but, you know, here, you know, I get

18    the people that started this are ending up don't even have

19    to testify, do anything, and now I'm getting, you know, my

20    life taken away from me for what they did but they don't

21    even have to be here, you know, and it's totally unfair.

22    This is the way I feel, you know.

23          *THE COURT:*  Well, you say "you know", but I don't

24    know.  Other than what I read in the factual stipulation, I

25    don't know anything about your case.  I'm not in a position

1  to know.  What's he talking about?

2         MR. STOBBS:  Here's the problem, Judge.  This case,

3  it started out as a state case, and he was represented by

4  Brian Polinski and prosecuted by Neil Schrader, and it

5  started as basically a complaint that a young girl had made

6  against Mr. Bechel, and it was charged in the state.  The

7  state got a search warrant.  The search warrant, in my

8  estimate, was a good search warrant.  They went to his

9  house, they searched his computers, and they searched for a

10  lot of different things on the search warrant that they --

11  on the computer they found images that are part of this

12  case.

13         THE WITNESS:  No.

14         MR. STOBBS:  Let me --

15         THE COURT:  Let him finish.  Then I'll let you

16  comment.

17         MR. STOBBS:  So he was charged in the state on just

18  what -- the allegations that the little girl had made, and I

19  think that that case kind of dragged on and on and on and

20  eventually got turned over to the feds.  The feds then

21  picked it up and it didn't become anything really about what

22  was in the state case, it was just the case here, what had

23  happened in Canada and bringing pictures across the

24  international border.  Federal authorities showed up at

25  Mr. Bechel's house and he gave a statement to them.

1              And so my understanding and my belief is that

2    all -- what offends Mr. Bechel is all the stuff that

3    happened in the state, which he's still presumed innocent.

4    He hasn't been convicted, he hasn't had his day in court

5    there.  But this case, the state has allowed this case to

6    proceed in its place just because I think that's how it

7    happens.  But when Mr. Bechel says he's been railroaded, he

8    hasn't had his day in court and these people haven't had to

9    testify, he's absolutely right, but that's not this case.

10             This case is completely separate and apart from

11   that case.  For example, the victim in this case is someone

12   who lives in Canada and the victim in the state case is

13   someone who lives in Madison County.

14             *THE COURT:*  So the state case is still pending;

15   it's not been resolved?

16             *MR. STOBBS:*  That's correct.

17             *THE COURT:*  And presumably could and will pick up

18   once the federal case is resolved?

19             *MR. STOBBS:*  I believe that to be a fact.

20             *THE WITNESS:*  I was told it's going to be dropped,

21   you know, the state case was going to be dropped.

22             *THE COURT:*  Which could happen.  But do you have a

23   guarantee that it's going to be dropped?

24             *THE WITNESS:*  No, I have no guarantees at all.

25             *THE COURT:*  Okay.  So while it's a possibility it

1    will be dropped, depending upon what happens here, I take

2    it, you have no guarantee of that, and you understand that?

3              THE DEFENDANT:  There's no guarantees of anything.

4              THE COURT:  Sure.  You understand that any time you

5    deal with a federal case, that that is separate and apart

6    from any state case, and -- at least I haven't seen it yet

7    in my years here.  I've just never seen some sort of an

8    agreement with a federal case that ties in a state case that

9    says, well, this federal plea agreement deals out

10   so-to-speak a state case.  I've never seen that happen.  So

11   whatever happens here, while it may affect a state

12   prosecution, doesn't necessarily affect a state prosecution.

13             THE DEFENDANT:  Wait.  Whatever you're going to

14   give me here, the state's going to look and say, you give

15   him 20 years, we ain't going to do anything about it.  You

16   know, why?  Because 20 years, I'm going to die in there.

17   I'm going die, you know, from this.

18             THE COURT:  Well, I mean, of course, I don't know.

19   First of all, I don't know what I'm going to give you and I

20   don't know what the state's attitude is going to be once

21   they see what happens in the federal case.

22             THE DEFENDANT:  Let me ask you this then:  Okay.

23   This started in July 28th, '06.  Okay.  The state know about

24   these charges and charged me with this, and for

25   two-and-a-half years it went on and went on and went on, and

1    I did everything that they wanted.  You know, I showed up

2    for court.  You know, I didn't miss court.  I never ran from

3    anything.  I was going to face it like a man.  And now, you

4    know, from my understanding, it's going to be dropped.  At

5    the same time the feds come in and pick it up.

6    Two-and-a-half years later, you know, I'm getting charged

7    with this.  Why not from the start?  You know.

8         THE COURT:  I simply don't have an answer to that.

9    I can't tell you the answer to that.

10        THE DEFENDANT:  Just none of this makes sense to

11   me, you know, what the state can do and what you can do and

12   this and that.  And when I came here when -- the first time,

13   I guess the charges -- the second time I guess it was, but

14   you know, the prosecutor got up and went and on and on about

15   the state case, and --

16        THE COURT:  Are you talking about at your

17   arraignment?

18        MR. STOBBS:  Detention hearing.

19        THE DEFENDANT:  Yeah.  It went on, and then, you

20   know, I'm told that they're not connected and they're not

21   related and nothing has to do with the other one, you know,

22   but they bring it all up, you know, what -- I'm confused on

23   what is and what ain't, you know.

24        THE COURT:  The prosecutor argued about the state

25   case as justification for your being detained and not

```
 1    released pending trial, I suspect.  Is that -- was that the
 2    nature of the argument?
 3              THE DEFENDANT:  I guess.  I have no idea.
 4              THE COURT:  I'm guessing about it.  I wasn't there.
 5              MR. STOBBS:  It was, Judge.
 6              THE COURT:  Okay.
 7              THE DEFENDANT:  At the same time, nothing's ever
 8    been proven.
 9              THE COURT:  Well, by the same token, Mr. Bechel, a
10    prosecutor could get up at a detention hearing and argue
11    about a person's criminal history.  Could be ancient
12    history, but -- completely unrelated cases, but making an
13    argument to a magistrate that, look at this guy's
14    background, look at his criminal history, look at what he's
15    done in the past, look at the kind of person he's been in
16    the past, consider that when you make your decision about
17    whether or not to detain the person; the idea being that a
18    decision about whether or not to detain a person is a
19    decision that a magistrate has to make in considering the
20    safety of the community.  That's the theory, the broad
21    picture theory that a magistrate is taking into
22    consideration, along with other things, in determining
23    whether or not to release somebody back out into the public
24    while the trial is still pending.  So his consideration is
25    not just about the pending case; it's about the person's
```

 1   history and characteristics, if you will.

 2        Given that, some of the things he's taking into

 3   consideration, he has to also consider that the defendant is

 4   given the presumption of innocence, but he has to consider

 5   the strength of the government's case and pending cases --

 6   case or cases -- as well as convictions, post-conviction

 7   adjustments, things like that.  I mean he has to consider

 8   everything as well as the fact that perhaps for the first 50

 9   years of your life you were a law-abiding citizen.  So there

10   are a lot of things a magistrate takes into consideration.

11   Doesn't mean that there's a legal connection to the case; it

12   just means that it's all information that the magistrate --

13   I'm sorry, I keep confusing those two -- all things that the

14   magistrate's going to consider when making that decision.

15        *THE DEFENDANT:*  Okay.  What am I charged with from

16   here?

17        *THE COURT:*  You're charged with -- let me just look

18   at the -- if I've got it here.  I'm looking in my file for

19   the -- I don't have your court file.  I've just got a little

20   small working file.  You're charged with -- now I'm looking

21   at the indictment.  You're charged in several counts:  Count

22   1 with sexual exploitation of a minor; you're charged in

23   Count 2 with transportation of child pornography; in Count 3

24   with possession of child pornography.

25        Do you want me to read the actual allegations?

1           *THE DEFENDANT:*  Well, let me -- okay.  There's

2     another person involved with -- several involved with this

3     here, and they went to the same place with the same girl,

4     had sex with the girl, and you know -- and what are you all

5     doing about that?

6           *MR. STOBBS:*  Hey, don't say "you all" when you're

7     looking at me.

8           *THE DEFENDANT:*  But I mean the government or

9     whatever.

10          *MR. STOBBS:*  Those gentlemen didn't take pictures

11    of the minor and bring them from Canada to the

12    United States.  That's the difference.  And that's part of

13    the problem recently that I've had with Mr. Bechel is that

14    that's the difference.  I mean had he just gone to Canada

15    and had sex with a girl -- she was like I think 15 or 16,

16    and that's legal in Canada.  The legality of having sex with

17    a girl isn't the issue here.  It's taking pictures.  Not

18    just taking pictures; it's bringing them across the

19    international border.  That's the problem, Judge.  So I mean

20    that's what differentiates this from other cases.

21          *THE COURT:*  So what he's saying is, the question is

22    whether or not they committed a federal crime.  And so

23    sometimes in some cases you may have, for example -- let's

24    just say -- I'm not talking about your case in particular.

25    Let's say, for example, you got a group of guys in Madison

1    County and they may have -- this group of guys may all have
2    sex with a 14-year-old and no federal crime has been
3    committed there.  I mean it's a state crime but no federal
4    crime's been committed.  But then one of those guys takes
5    pictures of all of these people having sex.  Now, he takes
6    pictures, then he puts those pictures out on the internet
7    and sends them around on the internet.  Now that one guy has
8    committed a federal crime.  He's taken pictures and he's
9    distributed those pictures on the internet, "through
10   interstate commerce" is the technical language.
11            Now, that one guy may very well -- if he's caught,
12   may well end up in federal court being charged with the
13   federal crimes that are involved.  Those other guys are not
14   because though they had sex with a 14-year-old, there's no
15   federal crime there.  They may be up to their ears in state
16   crimes and may be charged in Madison County and state court
17   with the state crimes and may see a lot of jail time for
18   that but they will never end up here.  Now, the other guy
19   may end up both in state court for the state crimes as well
20   as federal court for the federal crimes.
21            Do you see?  There's a distinct difference between
22   federal and state crimes and what you could be called to
23   answer for.  Now, may or may not be similar circumstances,
24   but I'm just saying that there are -- if you use that
25   example, there are some things that are state crimes and

 1   some things that are federal crimes and there could be a

 2   distinct difference between the two.

 3            THE DEFENDANT:  I don't even know what to say any

 4   more.

 5            THE COURT:  One of the things that I find -- if I

 6   could interrupt you for a moment.  And I don't know if

 7   you're having this problem, but one of the things that we go

 8   through when we take a plea in a case is, I have to ask a

 9   defendant if he's satisfied with his lawyer.  And the

10   question that they tell me in the book to ask is:  *Are you*

11   *satisfied with his representation, counsel, and advice?*

12   Well, I've learned over the years to make sure that the

13   defendant understands I'm asking about the lawyer's work

14   performance, his work product, and what he's done for the

15   lawyer because some defendants, I found out early in my

16   career, were confused with that question because some of the

17   things you hear from your lawyer -- and it may not be the --

18   your situation, because I'm not sure about your background,

19   but a lot of times defendants, particularly those who have

20   some experience in the state criminal justice system,

21   they're used to hearing certain things about sentences and

22   about state crimes and things like that.  Then they come

23   into the federal system and they're just taken aback at what

24   they hear about some of the punishments and some of the

25   crimes and some of the things that they're told by their

1    lawyer about the federal system.

2           Doesn't have to do anything with your case, but you

3    take, for example, the drug defendants.  They may get a

4    couple years for a drug offense in state court that they

5    could wind up getting 20 years for in federal court, and so

6    when they come to federal court for a drug offense and their

7    lawyer tells them, *Look, you're looking at 20 years*, well,

8    the first reaction is to think that their lawyer is

9    railroading them or selling them down the river or, you

10   know, is not looking out for their best interest.

11          One of the things I try to caution defendants on

12   is, you know, your lawyer's job is to do the best thing that

13   he can -- the best job he can do for you given what the law

14   is, given what he has to work with.  What he has to work, of

15   course, is the case he's presented with and what the law is.

16   The lawyer can't negotiate away the law.  He can't get with

17   the prosecutor and simply negotiate a prison term, for

18   example, that is not permissible under the law.  He can't

19   negotiate away mandatory minimum terms.  He can't negotiate

20   away what the judge is going to do with respect to a

21   guideline sentence or a nonguideline sentence or something

22   like that.

23          The lawyer can simply work within the system.  He

24   can't change the system.  He can work hard for somebody, and

25   if the defendant wants to go to trial, he can do his level

1    best at trial.  He can perhaps negotiate a cooperating plea

2    agreement if that's what the defendant wants to do.  He can

3    get up at time of sentencing and make the best argument he

4    can make to try to convince the judge to vary from the

5    guideline or to give a low statutory sentence or a low

6    guideline sentence or something of that nature, but a lawyer

7    cannot change the law.  He can't negotiate away the law.

8    That's all there is to it.

9         In your circumstance, I have no idea what your

10   relationship is with Mr. Stobbs or what it could be with

11   some other lawyer, but he can't tell the government who to

12   prosecute, he can't tell the federal government, *Look, turn*

13   *this back to the state, turn down this prosecution*.  He

14   can't change the law as it now stands.  His responsibility

15   is to do the best job he can do for you given what he's

16   presented with, given the case that's before him, and if a

17   guy didn't do it, for heaven's sakes, he can try the case

18   and try to convince the jury that the government hasn't met

19   their burden of proof.  You know, there's a lot of things a

20   lawyer can do but it all has to be within the system.  He

21   can't change the system and he can't change the law.

22        *THE DEFENDANT:*  That's just like there's almost two

23   sets of rules here.  You know, you got state, you got

24   federal, and you got different rules.  I mean this is what

25   it seems.

1          *THE COURT:*  You figured it out.  That's exactly

2     right, there are two sets of rules.  There's -- you're

3     talking about two sovereigns.  There's the federal

4     government, the United States of America is one sovereign.

5     The State of Illinois is a totally different sovereign, and

6     they are considered different, completely.  We have two

7     parallel systems of government, two parallel court systems:

8     One's state and one's federal.  And they're allowed to run

9     separately, they're allowed to run differently.  You can be

10    tried in both and you can be tried for -- as you're finding

11    out, you can be tried for the same case in essence and

12    different parts of the same case.  You're not being tried

13    for the same crime but different parts of the same case, and

14    it's perfectly legal.

15          Go back to that one example I gave you of the

16    guy -- the group of guys that commit the sexual offense in

17    Madison County.  They committed both state and federal --

18    the one guy committed both state and federal offenses.  We

19    don't have a system where we have one court.  I can't, as a

20    federal court -- federal courts are considered courts of

21    limited jurisdiction.  Federal courts are not going to try

22    state criminal violations of the law.  States are not going

23    to try federal criminal violations of law.  That's just all

24    there is to it.  Have to be tried in the two different

25    courts.

1          *THE DEFENDANT:*  Well, since I've been locked up

2     I've seen guys come in here, and one guy just come through

3     with seven felonies.  He's going to -- I don't know what

4     he's charged with, don't care either, but he's going for

5     like a 61 or couple months turnaround or whatever he wants

6     to call it, and he gets out, but he's got seven felonies,

7     you know.  It just -- it's just confusing to me, you know,

8     how somebody can be -- you know, just abuse the law so much

9     and get away with it or get -- you know, and here I do one

10    thing and I get my life taken away from me, you know.

11         *THE COURT:*  Well, you know, I think you make a

12    mistake when you start -- like you said, you don't even know

13    what the felonies are that he's supposedly committed.

14         *THE WITNESS:*  No, I don't.  I didn't ask, and, you

15    know, he's volunteered this information.  I didn't ask one

16    bit.  I don't -- it's none of my damn business.

17         *THE COURT:*  Well, what you'll find is in the state

18    system, I mean they'll run -- they're working on a high

19    volume basis.  They're throwing out charges, they're

20    combining charges, they're -- you know, the felonies

21    maybe -- all felonies are serious but they may be something

22    like theft felonies.  I mean, I don't know.  But you make a

23    mistake when you start trying to compare apples and oranges.

24         *THE DEFENDANT:*  I'm not doing -- what I'm -- the

25    only thing I'm doing is, you know, the man has seven

1  felonies.  That's what I was looking at, you know.  What

2  they are, I don't know, I don't care.  That's his business.

3  But it just --

4       THE COURT:  In state court they often strike deals

5  on these cases where they make a deal to plead to a certain

6  number of years and they'll throw out all but one charge

7  because they're getting -- okay, they're getting a deal on

8  one charge, therefore, they throw out the rest.  You know,

9  they -- it's as ugly as making sausage.  They'll just wheel

10 and deal on those cases because they're dealing with a very,

11 very high volume.  They can't take the time to, if

12 everybody -- if the prosecutor said, *Look, no more of these*

13 *deals, we're just -- we're not going to deal any more*, they

14 couldn't possibly have the time to try every case and meet

15 the speedy trial obligations, so they have to cut deals.

16 And so it's just not an ideal situation.  Quite frankly, the

17 public would scream if they sat over there and watched the

18 kind of deals that were made.

19      THE DEFENDANT:  Just like when I was in Perry

20 County, you know, couple inmates -- one was federal or --

21 yeah, one was federal, and he asked another state employee,

22 which later the state one told me and then he told John

23 about was they wanted to kill an ATF agent, you know, and I

24 risked my life, you know, to tell John this and go through

25 that process, risking my life, but this Court is taking

 1    mine, and I just don't see that as fair.  I grew up, you

 2    know, an eye for an eye.  That's not fair to me.

 3         *MR. STOBBS:*  Part of the big problem that I face

 4    ethically is that when I first got the case, because of

 5    Mr. Bechel's age and the charges and the mandatory minimum,

 6    I assumed there was going to be a trial because there was no

 7    way around it.  And so I forgot when, but Mr. Bechel called

 8    me up or wrote me a letter.

 9         *THE DEFENDANT:*  I wrote him a letter.

10         *MR. STOBBS:*  -- wrote me a letter indicating that

11    he had information about a possible hit on an ATF agent that

12    he believed was credible.  I dropped everything.  We talked

13    about it.  I called Ms. Scott and I indicated that

14    Mr. Bechel had information, so they immediately sent agents

15    down there.  I said, *Well, he's not going to talk unless I*

16    *know I can get something*.  He's not -- this isn't the same

17    situation of where we'll hear what he has to say and then

18    we'll decide, because if he's going to go to trial and get

19    all this time, I don't want to buy a pig in a poke and get

20    some Rule 35 down the road to cut his sentence by a little

21    bit.

22         I didn't just deal -- this is like an hour I ended

23    up having with Randy Massey, which was no walk in the park

24    because he didn't want to give anything away, but on the

25    other hand, he had an agent.  I was able to get out of

1    Randy Massey, which is no small feat, that Mr. Bechel would
2    get a 5K1 -- not a Rule 35; a 5K1, which has already been
3    filed that I got from the government that they would allow
4    for a presentence report to be prepared before sentencing.
5    So we didn't go into this morass of I'm thinking it's going
6    to be 15 years but it's 25.  I got the government to agree
7    that I could ask for as low as 15 years and that they would
8    not oppose it.  That's -- you obviously have to deal with
9    that.

10         But I told Mr. Bechel as clear as I could tell him:
11   This is not a situation of where, you know, you talk to
12   them, you give them information, you help them, and then you
13   turn around and go to trial.  It doesn't work both ways.
14   You can't have it both ways because then any deal that is
15   made is done with.  The statement that he made to the
16   probation officer to get his acceptance of responsibility,
17   I'm a witness to that, that he did what they said he did.
18   I'm a witness to him signing the stipulation of facts
19   that -- we have a signed stipulation of facts because of the
20   deal that he wanted me to cut with the government.

21         And so now I -- I have signed plea agreements,
22   signed stipulation of facts, and then I get back to my
23   office and I find that now the motion to dismiss and the
24   motion to suppress are two things that he wants argued, and
25   it's something that -- you know, I'm a witness to at least

```
 1    two statements that he made where he's implicated himself
 2    based on his desire to cut a deal.  And whatever he gets, in
 3    my opinion, is going to be too much, but I don't make the
 4    laws either, and I can't tell you what to give him and I
 5    can't tell the prosecutors what to charge him with.  I can
 6    tell you that I did my level best to try to get them to
 7    dismiss the more serious of the counts and they just
 8    wouldn't do it.
 9         But to get them to get a 5K1, which I believe has
10    been filed, in this part of the world that's a
11    substantial -- out of Randy Massey, even more.  That's
12    substantial.  So I mean it's -- the government has done
13    exactly what they said they would do, so I mean it's --
14         THE DEFENDANT:  I just feel, you know -- I took it
15    because when the -- if you want the story, I'll tell you the
16    story that when the one person told me what the other
17    person, you know, wanted to do, I set the whole night and
18    thought about it and thought about it, and the next day I
19    wrote a letter to John and I told him, and I held it until
20    they picked the mail up so nobody else could pick it up and
21    steal it and even try to read it because I was risking my
22    life for this person.
23         THE COURT:  I see the 5K1 has been filed.  I've got
24    it here in this working file, which is -- I'll verify for
25    Mr. Stobbs, that's an unusual event.  Most often in this
```

1    district --

2            THE DEFENDANT:  I don't even know what a five --

3            THE COURT:  Is a motion filed at or prior to

4    sentencing asking the Court to reduce your sentence.

5            THE DEFENDANT:  But the point I'm trying to make,

6    my point, you know, whether the Court sees it or not, is I

7    saved or risked my life in saving that man's life and now

8    you all are taking mine, period.  That's the way I feel.

9            THE COURT:  Well, what this motion does is it

10   allows the Court to -- it's a motion in which the government

11   is asking the Court to give you a reduced sentence.  I've

12   never known yet in my career so far -- when that kind of

13   information is provided I've never known the government to

14   just dismiss a case.  This is their only response ever is to

15   file a motion for reduced sentence.  They've never --

16           THE DEFENDANT:  So if I would have known about it

17   and agent would have got killed, you know, then what?  Then

18   I got to live with that, you know.  There ain't no way I'm

19   going, you know, let that go on, you know.

20           THE COURT:  Let me ask you this:  What do you think

21   the government should have done in response to your

22   providing information?

23           THE DEFENDANT:  They shouldn't take my life.

24           THE COURT:  What do you think they should have

25   done?  Just open the door, let you go?

1           THE DEFENDANT:  Why not?  You know, I saved a man's

2      life.  You know, I put my life on the line for that man, you

3      know.  And I didn't do it for any kind of fucking -- excuse

4      me, any kind of deal, you know.  I did it out of -- because

5      it's wrong, you know, to --

6           THE COURT:  So you didn't do it for a deal or to

7      get a reduced sentence, so why should they have then filed

8      the motion to reduce if that's not why you did it?

9           THE DEFENDANT:  Because it's the right thing to do

10     is what I felt.  You know, it was the right thing to do.

11          THE COURT:  That's something Mr. Stobbs got for

12     you.  It's something he did for you.  Do you get that?  You

13     get that?  You understand that?

14          THE DEFENDANT:  Yeah, I do.  It's just --

15          THE COURT:  So now, if you -- I guess I shouldn't

16     make that representation.  If they were to dismiss the case

17     against you and let you go, it would be the first time in

18     the 11 years I've been here that I've ever seen them do that

19     ever in this courthouse, not just with my cases, with any

20     case.  And other people's lives have been saved by virtue of

21     somebody cooperating, including law enforcement agents.  And

22     you think that's what you're entitled to?

23          THE DEFENDANT:  So it's okay for, you know, saving

24     somebody's life, but at the same time, you know, taking

25     somebody else's life for doing that?  That's what I don't

 1   understand.

 2          THE COURT:  Now, I'm not -- let's assume for the

 3   purpose of this question that you committed a crime here,

 4   just for the purpose of this question.  That's to go without

 5   any response at all?  I mean there's no penalty to be paid

 6   for your committing that crime?

 7          THE DEFENDANT:  I'm not saying there's not.

 8          THE COURT:  So isn't that -- I mean in the first

 9   instance, that's the whole point here.  That's the whole

10   point of a prosecution.  The public out there would say,

11   well, with what this guy's been charged with, if, in fact,

12   he committed this crime -- and of course, we don't punish

13   according to public opinion.  If we did, none of these

14   defendants would ever get out of prison.  But in terms of

15   public policy, there clearly is a public policy to penalize

16   people for committing crimes.  I mean you would give me

17   that?

18          THE DEFENDANT:  Sure.

19          THE COURT:  So you played a role in giving

20   intelligence to law enforcement about somebody that's trying

21   to hatch a crime?

22          THE DEFENDANT:  Right.

23          THE COURT:  Now, you say you saved the guy's live.

24   Maybe you did, maybe you didn't.  I mean maybe -- if you

25   hadn't said a thing maybe these guys could have pulled it

1    off, maybe they could have never pulled it off.  We simply

2    don't know that.  But at least you gave assistance in the

3    area with respect to giving them the intelligence about that

4    information, and your position is, well, that's sufficient

5    for me just not to be punished, period.  Forget public

6    policy, that it's a wash, even Steven.

7         THE DEFENDANT:  15 to 20 years is going to take my

8    life.

9         THE COURT:  Well, it remains to be seen what you're

10   going to get, but here's what I'm leading to.  And I'm not

11   trying to negotiate with you, Mr. Bechel.  Don't

12   misunderstand me.  I'm just simply talking philosophy with

13   you.

14        THE DEFENDANT:  I want to understand.

15        THE COURT:  My point is this, and it gets back to

16   where we first started with this hearing:  Mr. Stobbs's

17   responsibility to you is to do the best he can do for you.

18   His responsibility is not to change public policy.  It's not

19   to change the law.  It's not to get the government to do

20   something that it's impossible for them to do.  It's to do

21   the best thing he can do for you.

22        Now, the question I've got for you is:  Do you

23   think that he's failed you in some way?

24        THE DEFENDANT:  Maybe just not trying to explain

25   where I can fully understand because, see, I had a stroke

```
 1    back in April of '08.  I had a stroke.  I'm still having the

 2    effects from the stroke, you know, and I lost use of my

 3    right arm, I had slurred speech, motor skills, confusing and

 4    everything else, and then this -- that agent right there

 5    came -- that agent come along with another one, and, to me,

 6    they tricked me and lied to me and, you know, while I had

 7    the stroke and now I'm sitting here, you know, from all

 8    this.

 9          And I was facing the state court.  I never ran,

10    never did anything except for every time there was a court

11    date, go to that and do what I was -- you know, what they

12    asked of me.  I wasn't ever going to run.  Never, you know.

13    And now that's not going to happen and, you know, it's like

14    a back door situation to me, you know.

15          THE COURT:  Well, but here's your decision-making

16    process:  Mr. Stobbs has negotiated something for you that

17    includes a motion to reduce by the government, which they

18    rarely do.  It's not without precedent.  I mean they -- I've

19    seen motions filed to be considered at the time of

20    sentencing.  Just rare that they do it.  They typically file

21    those motions after a guy's already in prison.  So he's done

22    something unusual; not unheard of, unusual.  Are you

23    retained or --

24          MR. STOBBS:  Retained.

25          THE COURT:  You could get rid of Mr. Stobbs.
```

1          THE DEFENDANT:  I have no intention of doing that.

2          THE COURT:  You could try to convince Mr. Stobbs to

3    pursue this motion to dismiss and motion to suppress.  I can

4    tell you right now that what's going to happen is the

5    government's going withdraw that motion to reduce your

6    sentence, probably file a motion asking me to say that any

7    potential plea agreement's off the table.

8          So one of the things that's important to keep in

9    mind is that a defendant in a case has important decisions.

10   He and only he can decide whether or not to plead guilty.

11   If you go to trial, only you can decide whether or not

12   you're going to testify.  Things like trial strategy and the

13   like, things like filing motions to suppress, things like

14   that, those are lawyer like decisions.  Lawyer has to make

15   those kind of decisions.  I mean it's -- there's no question

16   he should talk to you about those things.  There's no

17   question he should explain to you why he believes they

18   should or should not be filed.

19         But you have a lawyer for a reason and you should

20   really spend time talking with him about and give fair

21   consideration to why he either does things or doesn't do

22   things.  Try to look through the answers, not at the

23   answers.  Understand that his job is not to change the

24   system; it's to work with the system.  Trust that he's

25   working with you, not against you.  I mean the fact that

1   he's gotten the government to file a 5K1 motion, motion to

2   reduce on your behalf, means that he's doing quite a job at

3   this point in time.

4           When a motion is filed -- what happens with a

5   motion to reduce means that it then becomes the judge's

6   determination as to whether to grant the motion and how much

7   of a reduction, if any, to grant.  So what's left now, if

8   you go through with a plea ultimately, is an argument

9   between the government and Mr. Stobbs, unless -- are you

10  precluded from arguing how much of a reduction?

11          *MR. STOBBS:*  Judge --

12          *THE COURT:*  Or restricted?

13          *MR. STOBBS:*  Yeah.  We would request down the 15

14  years.

15          *THE COURT:*  That's -- you're restricted to just

16  that?

17          *MR. STOBBS:*  Yes.

18          *THE COURT:*  So I started to say there's advocacy on

19  the reduction, but that doesn't mean that the Court can't,

20  on its own, make a decision in that respect.  The agreement

21  is a nonbinding plea agreement, so --

22          *THE DEFENDANT:*  You totally lost me.

23          *THE COURT:*  Okay.  I'm sorry.

24          *THE DEFENDANT:*  From the start I didn't understand

25  what --

1          *THE COURT:*  All right.  The fact that Mr. Stobbs

2     has negotiated a motion to reduce your sentence is a

3     substantial consideration that you need to take into

4     account, I think.  Ultimately what your sentence is going to

5     be is up to me.  It's up to the Court.  It's not up to

6     Mr. Stobbs, it's not up to Ms. Scott.  And as I sit here

7     right now, I have no clue what your sentence is going to be.

8     I haven't made any kind of decision on that.

9          And I understand your frustration, I understand

10    your pessimism.  I understand that when you're facing the

11    kind of time that you're facing in this case, that it's --

12    that things look bleak, but it's -- you have a case that you

13    have to deal with and you have no choice but to deal with

14    it, and you just have to make a decision.  And I don't see

15    where you have any choice but to make a decision what you

16    want to do, and it's up to you whether you want Mr. Stobbs

17    to be your lawyer in dealing with it or you want to get

18    somebody else.  I don't know what the government will do if

19    you get somebody else but I have a suspicion that they'll

20    take the deal off the table, but I don't know that for sure.

21    But I would make clear -- I'd find that out before I got rid

22    of Mr. Stobbs if I was you.

23          *THE DEFENDANT:*  I mean I have no, what do I want to

24    say, objections to Mr. Stobbs.  I have none.  But I just --

25    from sitting in jail this long and 24 hours a day and

1    thinking and thinking and thinking and, you know, just --

2    you name the situation, put it all together for me, and this

3    is what I come up with.  I don't know.

4        THE COURT:  Well, let me caution you on one thing.

5    Be very careful about comparing your case with others and be

6    very careful about listening to other people in jail.

7        THE DEFENDANT:  I don't mean to interrupt you but

8    there's one thing:  I don't discuss my case with nobody,

9    period.  I have not and I never will.  And I don't discuss

10   other people's cases either.  If they freely want to talk

11   and say something about their case, we're in a small room,

12   you can't help from listening.  But you know, I make no

13   judgment on them and I don't discuss it with them either.

14   You know, it's none of their damn business, period.

15       THE COURT:  Well, Mr. Bechel, at this point in time

16   I would assume that you're going to continue to be

17   represented by Mr. Stobbs and that you need some additional

18   time to think about your case.  Am I correct in both of

19   those things?

20       THE DEFENDANT:  The first part, keeping Mr. Stobbs,

21   yes.  I'll keep -- I mean, yeah, I want to keep him.  I had

22   no intentions of getting rid of him to begin with, but I

23   just felt that, you know -- I don't know what I felt.

24       **(Off the record)**

25                        *   *   *   *

```
 1              MR. STOBBS:  Judge, I'm going to -- if we could
 2    have more time, I'll call -- depending on what he wants to
 3    do because if he's going to change his plea and be
 4    sentenced --
 5              THE COURT:  Do you want to get Ms. Scott back in
 6    here for this part?
 7              MR. STOBBS:  Yeah.
 8              THE COURT:  I see this case is now set for November
 9    the 2nd.
10              THE DEFENDANT:  Let me ask, before they come back
11    in, what about, you know, the one motion that I filed?
12              THE COURT:  Both the motions you filed were
13    stricken by me, and the reason --
14              THE DEFENDANT:  There was four of them.
15              THE COURT:  Four of them?
16              THE DEFENDANT:  Yeah.  There should have been four.
17              THE COURT:  We only saw two.
18              MR. STOBBS:  I think he --
19              THE DEFENDANT:  Two was mailed in.  The two -- let
20    me ask you this:  How many pages are on the two that you
21    have?  Is it 14?
22              THE COURT:  The first one had three pages and the
23    second one has -- both are just three pages.
24              MR. STOBBS:  You filed two other ones that haven't
25    arrived yet.
```

1          *THE DEFENDANT:*  Wait a minute.  Okay.  In the paper

2     that I brought today was a copy of two that I mailed.  If I

3     could see them, I could tell you.

4          **(Off the record)**

5                              *   *   *   *

6          *THE DEFENDANT:*  Then I gave a package to the

7     deputies that brought me up here.

8          *THE COURT:*  Today?

9          *THE DEFENDANT:*  Yes.

10         *THE COURT:*  They wouldn't have gotten filed that

11    quickly.

12         *THE DEFENDANT:*  No, no, no.  It had your name on

13    it.  I had -- there's a whole bunch of papers in there, you

14    know, for you to read, and there's two more inside of that

15    that I wanted filed too.

16         *THE COURT:*  You brought them in today?

17         *THE DEFENDANT:*  Yes, I did.  They said they were

18    going to give them to you.  It was in a package, you know,

19    but the thing of it is, you know, the whole -- I wanted you

20    to read everything that was in there.

21         *THE COURT:*  Well, I don't know if you notice or

22    not, in the order that I entered striking your other two

23    motions, I directed the clerk of the court to accept only

24    pleadings filed by Mr. Stobbs.  We explained in that order,

25    Mr. Bechel, that when you're represented by a lawyer we'll

 1    only accept pleadings filed by the lawyer.  Now, the only

 2    exception to that is a pleading from you that says you want

 3    to fire your lawyer, but other than that -- and Seventh

 4    Circuit case law is clear on this:  When you're represented

 5    by a lawyer, the only pleadings that are appropriate to be

 6    filed are pleadings from your lawyer, not pleadings from --

 7            THE DEFENDANT:  Then let me ask you about the

 8    package then.  What are you going to do with the package

 9    that I had come up here?

10            THE COURT:  First of all, I didn't know you brought

11    one, but secondly --

12            THE DEFENDANT:  They said they were -- the deputy

13    gave it to the guy downstairs and the guy said he'd give it

14    to you.

15            THE COURT:  Well, I was in a hearing all morning.

16    We'll just give it back to you because I have no intention

17    of filing anything.  Was there a motion in there to fire

18    your lawyer?

19            THE DEFENDANT:  No.

20            THE COURT:  Then we'll just give it --

21            THE WITNESS:  But there was a motion in there -- I

22    have to look around -- that that agent lied, you know, to

23    the grand jury.

24            THE COURT:  We'll just give it back to you because

25    we're not -- we won't accept it.  Bob, would you see if you

1    can -- Katie, it's not in the chambers, is it?

2             THE DEFENDANT:  It's a brown envelope.  It's a big

3    one.

4             THE COURT:  Katie, Debbie says it's in the mailbox

5    downstairs in the clerk's office.

6         MR. STOBBS:  I think it's kind of a moot point.  I

7    just want him to take it back with him.  I'm not going to

8    accept it.

9             THE COURT:  Okay.  Let's have Ms. Scott back in so

10   we can talk about --

11        **(AUSA Scott re-enters the courtroom)**

12             THE COURT:  Go ahead, Mr. Stobbs.

13        MR. STOBBS:  Judge, the concern that I have is that

14   if I'm going to stay, since I'm going to continue to

15   represent Mr. Bechel, if -- a problem I see is if he wants

16   to proceed with motions to suppress and motions to dismiss

17   with an eye toward trial, I would move to withdraw at that

18   time because of the fact that he made a statement to the

19   probation officer in order to get acceptance of

20   responsibility as part of our plea agreement, and, secondly,

21   he signed a stipulation of facts, which those two things

22   alone make me a witness at a trial.

23             If we're going to stay on, as I thought I was for

24   the change of plea and sentencing, then I think that I

25   would -- I'd have no problem continuing on representing him,

1    but that's the only concern that I have.  And if he wants to

2    file the motions and whatnot, then I would have to move to

3    continue the trial because in Canada there's still a lot of

4    discovery that has not come this way because everything was

5    stopped based on my telling the government that we're

6    willing to negotiate with them and the plea agreement that

7    we did negotiate.

8              I think the trial's set for November 2nd, but I

9    would ask that it be moved, and, secondly, that I be allowed

10   to file the motions -- additional time to file the motions

11   just based on the fact that we have to continue the trial.

12             THE COURT:  Well, first of all, based on our

13   discussion, I can't believe that Mr. Bechel's going to

14   persist in his desire to file those motions, but -- and this

15   was a last minute surprise when he mentioned that he brought

16   those with him, but -- so I think you need more time to talk

17   to Mr. Bechel and work out your strategy here.  But whether

18   he -- after that conversation you decide that he's not going

19   to plead and you're going to pursue a different strategy, or

20   whether he decides he is going to plead, clearly you need

21   more time, and your motion to continue will be granted.

22             And under either scenario, the interest of the

23   defendant in pursuing his desires here outweigh the

24   interests of both the defendant and the public in a speedy

25   trial, and would be a manifest injustice if we were to --

1    miscarriage of justice if we were to force this case to

2    trial on November the 2nd, and so the time between now and

3    the time we reset this case will be excludable from the

4    Speedy Trial Act.

5             I didn't ask what you thought, Ms. Scott.  I take

6    it you didn't object to this continuance?

7             MS. SCOTT:  No, Your Honor.

8             THE COURT:  What I'm going to have to do is get

9    with my courtroom deputy and try to figure out a new date

10   for the trial, and as soon as we do that, we'll send a

11   notice for the date.

12            MS. SCOTT:  Your Honor, if I can just make a

13   comment.  If the decision is to go to trial, then we're

14   probably going to need to set out quite a distance because I

15   withdrew all my M-LAT [ph.] requests from Canada once I was

16   informed that he was going to plead, and it usually takes

17   about six months to get those things -- to get the documents

18   requested from Canada.  So I just wanted to give you a heads

19   up that if you're going to set it -- if he does decide to go

20   to trial, we'll need to set it kind of far in the future.

21            MR. STOBBS:  That's fine with me.

22            THE COURT:  Okay.  All right.  So we'll keep that

23   in mind when we reset it then.  If there's nothing further,

24   we stand adjourned.

25        *(Court adjourned)*

1                              **REPORTER'S CERTIFICATE**

2

3           I, Laura A. Esposito, RPR, CRR, CCR(MO), Official Court
      Reporter for the U.S. District Court, Southern District of
      Illinois, do hereby certify that I reported in shorthand the
4     proceedings contained in the foregoing 36 pages, and that
      the same is a full, true, correct, and complete transcript
5     from the record of proceedings in the above-entitled matter.

6           Dated this 13th day of August, 2014.

7

8                                   _____

9                                   LAURA A. ESPOSITO, RPR, CRR, CCR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25