1            IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF ILLINOIS
2

3   UNITED STATES OF AMERICA,      )
                                    )
4                   Plaintiff,      )
                                    )
5        vs.                        ) No. 09-cr-30007-DRH
                                    )
6   LARRY A. BECHEL,                )
                                    ) March 24, 2010
7                   Defendant.      )

8

                 **TRANSCRIPT OF PROCEEDINGS**
9                **FINAL PRETRIAL CONFERENCE**
           **BEFORE THE HONORABLE DAVID R. HERNDON**
10         **CHIEF UNITED STATES DISTRICT COURT JUDGE**

11  **APPEARANCES:**

12  For the Plaintiff:        Angela Scott, Esq.
                              Assistant U.S. Attorney
13                            9 Executive Dr., Suite 300
                              Fairview Heights, IL  62208
14                            (618) 628-3700

15  For the Defendant:        James A. Gomric, Esq.
                              O'Gara, Gomric, et al.
16                            6 East Washington
                              Bellleville, IL  62220
17                            (618) 234-2788

18  Court Reporter:           Laura A. Esposito, RPR, CRR
                              U.S. District Court
19                            750 Missouri Avenue
                              East St. Louis, IL  62201
20                            (618) 482-9481

21

22

23

24        Proceedings recorded by mechanical stenography;
    transcript produced by computer.
25

1          *(Court convened)*

2               THE COURT:  Let the record reflect that we're in

3     open court.  We've called the case of the *United States of*

4     *America vs. Larry A. Bechel*, 09-30007.  Government present,

5     represented by Assistant United States Attorney

6     Angela Scott.  Good morning, Ms. Scott.

7               MS. SCOTT:  Good morning, Your Honor.

8               THE COURT:  Defendant is present in court together

9     with his counsel, James Gomric.  Good morning, Mr. Gomric.

10              MR. GOMRIC:  Good morning, Your Honor.  How are you

11    today?

12              THE COURT:  I'm fine, thank you, sir.  The matter

13    is set on a for pretrial conference, set on the Court's own

14    motion.  This case is set for trial on May the -- is it the

15    3rd, Sandy?

16              COURTROOM DEPUTY:  Yes, sir.

17              THE COURT:  May the 3rd.  I wanted to call us all

18    together because this case has had a varied history.  It's

19    been before the Court a number of times and the defendant

20    has been through one prior attorney.  We've had the case set

21    for a number of things -- things have been called off -- and

22    I'm not going to go through the entire history.

23              But I set the pretrial so that I could confirm that

24    both parties are going to be ready to go to trial on the

25    3rd.  So let's establish that first.  Ms. Scott, you're

1    going to be ready to go to trial on the 3rd?

2         MS. SCOTT:  Your Honor, the only issue I would

3    foresee is, as I informed the Court when this matter was --

4    when the two change of plea hearings failed, we had stopped

5    the process of getting an M-LAT, or M-LAT request.  I do

6    have one M-LAT request that came back this week.  I still

7    have another one pending.  That's the only thing I can see

8    that would -- the government would have to -- I would hope

9    that we would get it before then.  These things have -- I

10   filed them right after we realized we were going to be going

11   to trial.  Otherwise, I think the government will be ready,

12   Your Honor.

13        THE COURT:  Since you got the one back, you're

14   optimistic, I assume, that you're going to get the other one

15   back in a timely manner?

16        MS. SCOTT:  I hope so, Your Honor.

17        THE COURT:  We're a little more than a month out,

18   so have you checked on the other one?

19        MS. SCOTT:  Yes.  I'm not sure what the hold-up is.

20   Actually, the one that we got back first we thought would

21   give us the most problem because it was records from

22   Children and Family Development regarding the victim.  All

23   we're waiting on now are hotel records, so we thought that

24   would be pretty simple to get back, and apparently it's not.

25   So we've gotten a couple e-mails from the Canadian liaison

1    wanting more information.  We've responded to all of that.

2    And I have not heard anything about that M-LAT request yet,

3    except that it's still pending.

4         THE COURT:  Okay.  And Mr. Gomric, you're ready to

5    go to trial on the 3rd?

6         MR. GOMRIC:  You've just had a colloquy with the

7    government relative to the processing of documents from the

8    Canadian government.  Yesterday I received discovery -- not

9    a lot of it, but some -- and there was -- I received it by

10   way of e-mail communication.  The discovery was attached to

11   a communication to me which indicated that there was further

12   material pending potentially.  Now I'll have to qualify my

13   readiness by saying depending on what comes, if any.

14        THE COURT:  Assuming that it's not a gazillion

15   documents that -- Ms. Scott, that which is yet to be

16   forthcoming is the very material you've just talked about?

17        MS. SCOTT:  No, Your Honor.  The stuff that I sent

18   to Mr. Gomric yesterday was the first M-LAT, documents from

19   the first M-LAT request, which were the records from the

20   Canadian Ministry of Children and Family Development.  I

21   also indicated in my e-mail that we're still waiting on the

22   other M-LAT, which are the hotel records.  I'm not sure why,

23   I said, that's taking so long, but I did send, I think it

24   was like 30 -- little over 35 pages I think of the records

25   from the Children and Family Development.

1          *THE COURT:*  That's what I meant.  I mean what you

2     haven't sent him are the things you're still -- the other

3     M-LAT that you're still waiting on, the hotel stuff, is that

4     what you have not -- that's what you've not sent him?

5          *MS. SCOTT:*  Yes.  I'm sorry.  I misunderstood.

6          *THE COURT:*  You don't have any other discovery that

7     you're withholding at this point, I take it?

8          *MS. SCOTT:*  There's only -- we're trying -- well,

9     can I -- do you want me to approach the sidebar?  I don't

10    want to really say in open court the -- there's a couple

11    things that we're still trying to work on that we haven't

12    had luck on.

13         *THE COURT:*  Talk about it at sidebar if you want.

14    I guess I don't understand why we need to talk about it at

15    sidebar.  If you want to talk about it at sidebar, we can.

16         *MS. SCOTT:*  Well, I mean, the thing is the

17    defendant's present, and one of the things that we need to

18    do is interview a member of his family, and I wouldn't want

19    Mr. Bechel to notify that person.

20         *THE COURT:*  But this is something that you haven't

21    yet done.  There isn't any discovery that you have that you

22    haven't disclosed?

23         *MS. SCOTT:*  Correct.  And this is -- we learned

24    this during the second interview with the victim, so this is

25    not something that we knew from the very beginning of the

1    case.  As I said, we kind of put everything on hold during

2    those two change of plea hearings.  But we have everything,

3    we have the computer, forensic reports, we have, you know,

4    the two interviews with the victim.  Everything that I have

5    so far has been turned over.  There's one document that I'm

6    going to ask the Court to review in camera to determine

7    whether or not it should be turned over.

8              THE COURT:  Okay.

9              MS. SCOTT:  But other than that, everything I have,

10   except for M-LAT, of course, has been turned over.

11             THE COURT:  Okay.  That was my point.

12             MS. SCOTT:  Sorry.  I misunderstood.

13             THE COURT:  Now, in terms of a good faith estimate

14   at this point, Ms. Scott -- and I'm not asking you obviously

15   to -- at this stage, unless you're prepared to, reveal any

16   kind of a witness list, but at this point in time how long

17   do you think your part of the case will take?

18             MS. SCOTT:  Your Honor, that's a hard question to

19   answer because --

20             THE COURT:  Seems to be the pattern today.  I ask

21   hard questions.

22             MS. SCOTT:  There are issues with the victim.  I

23   forgot to mention this actually when you asked me if I was

24   going to be prepared for trial on March 3rd or not.

25             THE COURT:  May 3rd.

1          MS. SCOTT:  One of the things that we need to do, I
2    believe -- and John Stobbs and I had talked about it prior
3    to Mr. Gomric getting on, was conduct a videotaped
4    deposition of the victim.  I don't believe that she is going
5    to be willing to come to the United States, and so we were
6    talking about how we would accomplish that.  Apparently
7    there's some issues because it's in Canada, so the marshals
8    wouldn't be able to transport Mr. Bechel there, and we can't
9    force her to come to the United States.  So I've been
10   contacting our OIG person to figure out how we can work that
11   out where we can get her -- where the defense will have an
12   opportunity to cross-examine her.
13          The second thing is, Your Honor, she -- at this
14   point, because of the age of the case, she's not the most
15   cooperative victim in the world.  I'm sure Your Honor knows,
16   in a lot of these sexual assault cases the victim believes
17   that maybe they did something that provoked it or whatever,
18   so that's an issue we're looking at, Your Honor.  I would
19   say that if I put her on, probably two, two-and-a-half days.
20   I can't imagine it going much more than that, Your Honor.
21   And if I don't put her on, then maybe a day-and-a-half.
22          THE COURT:  Any clue as to how long your defense
23   case is going to take?
24          MR. GOMRIC:  Not particularly, no.  Won't be long.
25   I will state for the record that any concensus that was

1   reached relative to the topic of a deposition of any type,

2   there's a new regime.

3           THE COURT:  It's not binding on you.

4           MR. GOMRIC:  Yes.  We don't agree to anything of

5   that sort, notwithstanding anything that Mr. Stobbs may have

6   represented previously.  If the government is in possession

7   of statements from the victim wherein she indicates anything

8   along the lines of that she's at fault, we ought to have

9   them.  And you know, in terms of length of trial, hard to

10  say, but I don't see us taking too much time.

11          THE COURT:  Well, okay.  So we're talking about a

12  case here that may take a week, which is lot different than

13  what we originally were hearing about in this case.  So do

14  you have statements from the purported victim?

15          MS. SCOTT:  I have turned everything over in

16  discovery.  The one that I'm specifically referring to is

17  her second statement.  It's Bates stamped number 138.

18  It's -- of the materials I sent to the defendant.  One of

19  the things she said was, she expressed concerns and feelings

20  regarding the situation with Bechel and felt responsible for

21  the situation.

22          THE COURT:  Is that something you've already given

23  to Mr. Gomric?

24          MS. SCOTT:  Right.  I turned it over to Mr. Stobbs,

25  and then when Mr. Gomric came on we sent it -- sent the

1    discovery again on January 21st.  And that's page 138 of the

2    Bates stamped documents.  There's also -- I know they did a

3    video.  There's also two -- yes, there's two videos that

4    have been turned over that contain her actual interviews.

5         *MR. GOMRIC:*  If I may.  The existence of one

6    statement conveyed to me doesn't preclude the existence of

7    additional statements that may contain that information and

8    may vary in part, so the suggestion that it's found on page

9    138 is well taken and I accept that as much, but if there is

10   any other material that we've not yet received we would ask

11   that it be produced.

12        *MS. SCOTT:*  Your Honor, again, as I just said, two

13   statements were taken from the victim.  Both statements have

14   been turned over in discovery along with the CD's of the

15   videotaped interviews.  One was taken, I believe right

16   before we indicted the case or maybe right at the time we

17   indicted and another one was taken a little later.

18        Right now, as I indicated to the Court, the only

19   thing that's outstanding is the one M-LAT response.  There's

20   a document that I'm going to file a motion for in camera

21   review on, and there's something that we would like to do,

22   but it's not necessary to the trial if we do it.

23        *THE COURT:*  But it's something you haven't yet done

24   is what you're saying?

25        *MS. SCOTT:*  Right.  But everything I have as of

 1    this second -- well, let me go back a little bit.

 2          We -- at the detention hearing with Mr. Stobbs we

 3    turned over some documents relating to prior accusations of

 4    sexual abuse by Mr. Bechel.  And if the Court recalls, the

 5    presentence report was done prior to this plea, and those

 6    documents were -- or that information is included in the

 7    PSR.  Now, we have, of course, the full DCF files on those,

 8    but we've never turned those over because they're not --

 9    it's our opinion that they're not relevant.

10          *THE COURT:*  And you don't intend to?

11          *MS. SCOTT:*  And they're confidential.

12          *THE COURT:*  You don't intend to submit any 404 --

13    use them by way of 404(b) or anything of that nature?

14          *MS. SCOTT:*  Your Honor, at this point we've

15    discussed it and I'm not positive if I am.  If I am, I will

16    provide timely notice to Mr. Gomric.

17          *THE COURT:*  And then you would disclose the

18    material contained in that?

19          *MS. SCOTT:*  I would ask the Court for an order

20    because it is confidential.  With respect to like, for

21    instance, the pending charge, Madison County charge involves

22    him sexually assaulting his niece.  There are -- I've sent

23    them the basic information with her name redacted, but like

24    I said, there's ICAC interviews, there's interviews by DCFS.

25    All of of those are confidential and we have not disclosed

 1  those.  We don't believe that they're relevant at this point

 2  because we have not determined whether or not we are going

 3  to introduce this evidence.  We did --

 4          THE COURT:  Okay.  So you have the files but

 5  because you don't intend to introduce the evidence, you

 6  haven't disclosed those files, those interviews and the

 7  like, to the defense counsel?

 8          MS. SCOTT:  Right, because they consist of

 9  interviews with, you know, the parents.

10          THE COURT:  Which are confidential DCFS.

11          MS. SCOTT:  Right, about what they knew about

12  Mr. Bechel, things like that.  So --

13          THE COURT:  But your plan is, if you determine that

14  you want to use them as 404(b), then you would seek my -- a

15  Court order to then disclose them to the defense and you'd

16  give them a 404(b) notice?

17          MS. SCOTT:  Of course, Your Honor.

18          THE COURT:  Okay.  Now, as far as this in camera,

19  if you submit something to me in camera, you'll also submit

20  then some memo as to why you think it may not be disclosable

21  to the defendant?  Is there some privilege or something that

22  so far causes you to believe it has not been disclosable up

23  to now?

24          MS. SCOTT:  Yes, Your Honor, and we've -- we've

25  decided that, in an abundance of caution, it's better to

1   have the Court look at them.  And basically what they are,

2   are the agent's -- the notes that the agent took from the

3   second interview of the victim.  And typically we don't turn

4   over agent notes, but they were provided to me, and, in

5   fact, because they were provided to me and they are in my

6   possession, we thought it would be better to let the Court

7   look at them and determine whether or not we should go ahead

8   and -- I mean the case law, that we normally don't have to

9   turn over agent notes unless there's some kind of accusation

10  that the notes differ from the report.

11          THE COURT:  Okay.  I forgot what I was going to

12  ask.

13          MS. SCOTT:  I mean if Your Honor believes that the

14  agent notes are discoverable, I can turn them over today.  I

15  don't have a problem with that.  I just thought that -- you

16  know, our position typically is that agent notes aren't

17  discoverable.  We have had instances where the defense

18  attorney has asked for the agent notes on the basis that

19  they believe that maybe there's something in the notes that,

20  you know, isn't in the report or differs from the report,

21  something like that.  In those cases, we've challenged it,

22  but we have turned them over when -- the Court usually

23  orders us to turn over, actually in camera, so they can

24  review and make sure there's nothing there.  I'm kind of

25  rambling on.

1          *THE COURT:*  Pursuant to *Giglio* or something?

2          *MS. SCOTT:*  Right, right, because if there's a

3   difference, then, of course, you know -- so that's one thing

4   that we were going to do, Your Honor.

5          *MR. GOMRIC:*  If the notes are the same, what's the

6   harm in turning them over?

7          *MS. SCOTT:*  Your Honor, there is no harm.  It's

8   just that it's our basic position that we usually don't

9   necessarily turn them over, so I mean I don't want to just

10  start turning over agent notes when our position is that we

11  don't have to turn them over unless the Court orders us to

12  do so, and we believe that's supported by the case law.

13         *THE COURT:*  Okay.  With respect -- I know where I

14  was going to go.  With respect to this issue of the

15  purported victim's testimony, while the trial is a little

16  more a month away, that may not be a lot of time to deal

17  with this particular issue.  This strikes me as something

18  that's reasonably major to deal with.  So --

19         *MS. SCOTT:*  Your Honor, we have been trying to

20  have -- the Royal Canadian Mounted Police have just been

21  invaluable to us.  They have tried several times to

22  interview her.  We were finally able to get the second

23  interview.  We've contacted her about making a victim impact

24  statement when we thought the plea was going to go through,

25  and she just -- at this point, like I said, she just

1   believes that, you know, as she said in her interview, that

2   she feels somehow responsible for it.  And also, her brother

3   is being very protective of her and sometimes he won't let

4   the agents interview her.  So it's just kind of a mess with

5   the victim.  So I don't know.  You know, I think I could

6   probably prove my case without her, and, you know, if she --

7   I don't want to put her through any more trauma than she

8   already has been through, so you know, I don't know what

9   we're going to do.

10        *THE COURT:*  Well, I mean I don't know what all the

11   case law is in this area, but one of the questions that

12   comes up is whether or not the case law would support the

13   use of video conferencing technology to take her testimony

14   either at the time of trial or prior to.  I mean I don't

15   know.  I'm just throwing out ideas.  But it sounds like

16   something that needs to be briefed, and I would think that

17   this is something we need to be working on sooner rather

18   than later.  If it looks like you just simply can't get her

19   here, then perhaps these alternatives need to be pursued.

20        *MS. SCOTT:*  You know, like I said, we've been

21   working with the people -- we worked with the Canadian M-LAT

22   people to try to figure out how we can work this because, as

23   it was explained to me, because she's not a U.S. citizen we

24   can't subpoena her, make her be here.  If she wants -- if

25   she doesn't want to be here, she doesn't have to be here.

 1           So the only other alternative that they suggested

 2   was a videotaped deposition.  However, the issue with that

 3   again was -- with respect to Mr. Bechel, since he's in

 4   custody, the issue that was -- how it was explained to me

 5   was the marshals would only have custody of him while he was

 6   in the United States and once he was transferred to Canada,

 7   we have to do like a TCO and have a Royal Canadian Mounted

 8   Police take custody of him or something like that.

 9           But you know, that's another issue that we're

10   facing.  And I have been in contact with my -- my contact in

11   DC to try to figure out how we can work this, and the

12   problem is, we can't -- but hearing anything further from

13   the victim, I don't know if she'd be willing to come or not.

14           THE COURT:  Well, that's why I wonder about a video

15   conference where it can be done realtime, whether that would

16   be by deposition or even during the trial itself.

17           MS. SCOTT:  I do believe, you know, defendant has

18   the right to cross-examine her and that's why we're trying

19   to work out the best way to do that, either deposition or

20   video conference like the Court suggested.

21           THE COURT:  Well, I think it's something that you

22   need to work on a lot sooner than very much later.

23           Okay.  Mr. Gomric, are there any issues that you

24   had that you want to discuss today?

25           MR. GOMRIC:  I've received, not in January, but on

1    February 18th, 2010, 139 pages Bates stamped discovery.

2    Yesterday I received Pages 141 through 176.  I assume that's

3    typographical.  I assume there is no page 140.

4         In terms of the DCP -- and the Court may be

5    familiar from the state court days, Department of Child

6    Protection, these documents in these types of investigations

7    are -- they're regularly conveyed to defense counsel.  In

8    fact, I received three pages of the DCFS reports beginning

9    on Bates stamp page 52, which begins with a non sequitur,

10   *the bed with Larry*, after page 51 ends with nothing that

11   would suggest leading to that portion of the sentence.  In

12   other words, I fail to understand disseminating some subpart

13   of those documents without being in possession of the

14   totality.  And I'm not -- if they're not going to utilize

15   them as -- you know, if they're not going there in terms of

16   suggesting that it's 404(b), then I'm not going to push it

17   real hard, but I guess we'll take it on the fly and see

18   where it goes.

19        In terms of taking a deposition this girl, number

20   one, we still don't have all of the material from Canada.

21   You get into an interesting quandry in terms of the

22   chronology of events.  We are adamantly opposed to any type

23   of deposition of this young lady that wouldn't involve her

24   testifying live in the presence of these jurors.

25        I will research the matter and we'll go from there.

 1    Thank you.

 2         MS. SCOTT:  Your Honor, I want to clarify something

 3    because I don't like what was just told to the Court.

 4         On February 12th, I received an e-mail from

 5    Mr. Gomric saying that he did have discovery from

 6    John Stobbs but it wasn't in a sequential fashion, so I --

 7    what we did was re-copy the discovery and send it to him on

 8    February 17th.  So he had the discovery before

 9    February 17th.  It wasn't just -- it's just that it wasn't

10    in a sequential fashion, so -- and the stuff that I -- that

11    he received yesterday, Your Honor, again, I just got that

12    from Canada.  I can't produce items I don't have.

13         With respect to the other victims, Your Honor,

14    right now the government is looking more at -- rather than

15    putting these children through the trauma of testifying, the

16    government is looking now really at using these victims

17    under the 3553(a) factors when it comes to sentencing, which

18    is what we did with respect to the PSR.

19         THE COURT:  Well, I'm going to go ahead and direct

20    you to turn those DCFS records over just so there's no

21    question later with respect to timeliness.  If you end up

22    deciding to use them for 404(b), you'll still be responsible

23    for putting the defendant on notice that you're going to use

24    it, but in the meantime go ahead and turn that information

25    over to the defendant so that he's got all of the DCFS

 1    records.

 2            MS. SCOTT:  Okay.  So you're referring to, not only

 3    the current charge, but the other allegations?

 4            THE COURT:  Right.  All the prior -- that's no

 5    reflection that I think it's relevant, it's just that -- and

 6    you've already suggested you don't think it's relevant.

 7    That's just a precautionary order by me that the defendant

 8    have the material well in advance of any indication by the

 9    government that they intend to use it as 404(b).  I don't

10    know whether you're going to ever arrive at that conclusion.

11    Sounds to me like they've got a little bit of it.  I'd just

12    as soon they have it all.  That way they've got more

13    information than not.

14            MS. SCOTT:  Okay.  And Your Honor, I'd like to tell

15    the Court that the materials, that basic materials that I

16    gave out in discovery redacted the names of these

17    individuals because they were -- I think there's one now

18    who's an adult, but in the DCFS materials, can I still

19    continue to redact these victims' names?  I have not turned

20    it over, any -- even the name of the niece, who I'm sure he

21    already knows because he's charged in Madison County.  But I

22    have redacted all the victim information regarding these

23    other allegations of abuse.  So I'm asking the Court's

24    permission to continue to redact them when I turn over the

25    DCFS records.

 1          THE COURT:  Mr. Gomric, do you have a reason to

 2    have the names not redacted?

 3          MR. GOMRIC:  I will waive receipt of the redacted

 4    material.  If it becomes problematical, we'll address it to

 5    the court.  Only reason I referenced February 17th, the

 6    government made a point of referencing January of 2010 as

 7    the date of reference, if I recall correctly from what I

 8    heard during its presentation.  Yes, I had received

 9    documents from Mr. Stobbs.  Yes, the government was kind

10    enough to produce to me the additional 139 pages.  That

11    production occurred in February as opposed to January.

12    Thanks.

13          MS. SCOTT:  Your Honor, it was not an additional

14    139 pages.

15          MR. GOMRIC:  I think I said the original 139 pages

16    but I'm not going to quibble.  It is 139 pages of, I

17    suppose, the discovery.  Thank you.

18          THE COURT:  Doesn't sound like anybody's doing

19    anything wrong.  I don't think there's any real problems

20    here.  So again, I would encourage both sides to research

21    this issue with respect to the purported victim's testimony

22    so we can be prepared to deal with that issue when it does

23    arise so that there isn't a problem that's going to hold up

24    the trial or become a real issue in this case.

25              Now, there was, back in January, a -- one of the

1    standard orders entered by the magistrate for pretrial

2    discovery with respect to discussion of what had to be filed

3    within 21 days and what had to be filed within ten days and

4    the like.  In light of the recent Supreme Court case in

5    *Bloke vs. United States*, that case found that any delays

6    resulting from pretrial motion preparation is not

7    automatically excludable under 18 United States Code,

8    Section 3161(h)(1), but requires the specific findings.  And

9    so the Court hereby finds that this time that has been --

10   that was granted earlier in this case in order for the

11   parties and the defendant specifically to complete discovery

12   and file pretrial motions is excludable under 18 United

13   States Code, Section 3161(h)(7)(A), as ends of justice are

14   served by the granting of such additional time as in the

15   best interest of the public and the defendant in a speedy --

16   outweighs the best interest of the public and defendant in a

17   speedy trial.  It would be a miscarriage of justice to force

18   the defendant to trial without adequate time to prepare.

19   And so the time that was represented in the magistrate's

20   pretrial order was excludable from the Speedy Trial Act as a

21   consequence.

22          Unless the Court hears of any problems with respect

23   to the things that we've been talking about, the trial date

24   of May the 3rd will remain on the Court's docket, and the

25   Court expects that both sides will be ready to go.  With

1    respect to the issues that we've been discussing, the Court

2    stands ready to have additional hearings or rule on any

3    additional motions that may arise pursuant to these issues

4    so that we can make sure that both Mr. Bechel's speedy trial

5    rights, as well as the speedy trial rights of the public,

6    are met with respect to this case.

7            If we have no other issues to discuss, I see no

8    reason other than to adjourn this.

9            Ms. Scott, anything else we need to discuss?

10           *MS. SCOTT:*  No, Your Honor.  I've been -- I have

11   the Court's instructions as to the DCFS materials, and I've

12   also informed the Court that we're waiting on the M-LAT

13   response, so I think I've covered everything.

14           *THE COURT:*  Mr. Gomric?

15           *MR. GOMRIC:*  If the Court want to treat its motion

16   relative to the handwritten notes of that second interview

17   of the agent.

18           *THE COURT:*  I'm sorry.  With respect to the

19   handwritten notes, what did you say?

20           *MR. GOMRIC:*  She had talked about an in camera

21   review.

22           *THE COURT:*  Yeah, if you'll get those to me.  What

23   I'd like is to look at those and look at the agent's

24   reports.  I don't see a problem taking care of that pretty

25   promptly.

```
 1              Katie, is there anything else we need to cover?
 2   Sandy, anything else you can think of we need to cover?
 3              COURTROOM DEPUTY:  No, sir.
 4              THE COURT:  Okay.  We'll resolve that pretty
 5   quickly.
 6              MS. SCOTT:  And Your Honor, when -- don't you have
 7   a deadline that you set for motions in limine?
 8              THE COURT:  21 days before the trial.  We stand
 9   adjourned.
10         (Court adjourned)
11                          *   *   *   *
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                    **REPORTER'S CERTIFICATE**

2

3        I, Laura A. Esposito, RPR, CRR, CCR(MO), Official Court
Reporter for the U.S. District Court, Southern District of
Illinois, do hereby certify that I reported in shorthand the
4   proceedings contained in the foregoing 22 pages, and that
the same is a full, true, correct, and complete transcript
5   from the record of proceedings in the above-entitled matter.

6        Dated this 14th day of August, 2014.

7

8                                  _____

9                                  LAURA A. ESPOSITO, RPR, CRR, CCR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25